Toshiba Corporation v. Optical Devices, LLC Okay, the next argued case is number 16-2012 Toshiba Corporation v. Optical Devices, LLC Mr. Kevin Penikowski Good morning your honors and may it please the court Stan Penikowski for appellant Toshiba Corporation I would like to reserve five minutes for my rebuttal please Okay Your honors, the board's final written decision should be reversed and remanded for one or both of two independent reasons First, inherent anticipation by the Baird reference is the only conclusion that the record supports Second, it was unreasonable for the board to reject the ST data sheet status as a printed publication On inherent anticipation Your arguments for inherency are supported by Dr. Zeck who says Baird probably, quoting, determines TES and FES and that it's, quote, not much of a leap, close quote, to make that determination The standard for inherency explicitly states that we can't find the on the basis of probabilities or possibilities That's MEH biofile How is that evidence sufficient? Your honor, Toshiba does not contain the Dr. Zeck's deposition testimony that you just quoted is sufficient to establish inherent anticipation If that were all that was in the record, we would agree that under the substantial evidence standard of review that is not enough However, Dr. Zeck's depo testimony has to be understood in light of two things One, it needs to be understood in light of his other testimony in his declaration and deposition where Dr. Zeck said, for example, in paragraph 82 of his declaration at page 1723 of the appendix It is inherent that the server control processor determines a focus error signal and a tracking error signal And as part of that explanation, Dr. Zeck explained because Barrett states that the server control processor performs focus and tracking control loops it is necessarily the case that a focus error and tracking error signal are generated The statements in his deposition were in response to a particular question that was part of a discussion about the use of continuous composite servoing in the prior art And the second important part of that backdrop is that in his testimony Dr. Zeck never said that there was another way in which you could implement servo control in Baird without determining a focus error signal and a tracking error signal He did say 99% plus in this portion of his deposition but he never attributed any type of remainder to a different type of system In fact, when specifically questioned about whether OD's experts' proposals could be implemented in Baird Dr. Zeck explained why it was that an open loop system could not be used in Baird For example, at page 1934 of Dr. Zeck's deposition he explained that in order for a servo to work properly, you have to close the loop You have to introduce the error signals you have, and this applies to servos in general As for 50 years or 80 years If you don't close the loop, then you are running what's called an open loop system And Dr. Zeck explains that you can't do an open loop system with optical disk drives And that's because, as Dr. Zeck explained in his declaration because an optical disk substrate is neither perfectly round nor perfectly flat You cannot use the type of predictive or feed-forward control that OD's expert pointed to from very, very precise systems like robots in the environment of an optical disk drive You do have, though, the testimony on the other side. Is it Dr. Caliphant? Dr. DeCaliphant Dr. DeCaliphant And while, in your view, maybe a close case I mean, the board was free to accept his testimony which said that the Baird system does not necessarily come back with the difference signal that we have in terms of an FES and a TES So there was testimony on the other side Yes, Your Honor. There was testimony on the other side And the board was free to accept that testimony if it was a reasonable explanation for why it is that Baird does not inherently disclose determining an FES and a TES And Dr. DeCaliphant never explained how it was that you could implement these two alternatives in the real-world environment of an optical disk He was essentially taking environments like robots and radars transposing those to create a fictional environment of a perfectly flat and perfectly round optical disk substrate And Dr. Zeck explained why that couldn't work So it wasn't reasonable for the board to rely on those two alternative explanations And that is why... But aren't you basically asking us to second-guess the board's assessment of the state of the record or the evidence? No, Your Honor. We're not asking you to second-guess the board's assessment We're asking you to apply the substantial evidence standard which, of course, is deferential And as the Supreme Court, say, consolidated Edison it asked, was there sufficient evidence that would be adequate for a reasonable mind to draw a particular conclusion? One of the things upon which you rely at 36 of your blue brief is you quote Baird from column 6, line 16 to 20 that, quote, DVD servo systems use... Unlike CD systems, DVD servo systems use differential phase detection, DPD between photodiode signals, and you have a list for track following and track counting and you're doing that to show a teaching of TES Yes, Your Honor How should we understand that sentence that you quote We have no briefing on the meaning of DPD Nobody's equated differential phase detection with determining TES or FES as far as I can see in the record Why is it there? And when you talk about relying on things, how can we rely on that? Your Honor, this sentence is simply gravy The court can find that the board's conclusion was unreasonable based solely on the other disclosures at column 557 to 625 of Baird along with its figures but addressing this particular sentence, Your Honor what Baird is explaining here is that we know from Baird that the digitized photodetector signals are inputs into the servo control processor, block 304 and it explains here that as a DVD servo system it's detecting differences between measurements you're getting from the photodetector signals and in their patent owner's response below optical devices argue that this is a different method than calculating a track error signal and Your Honor, in our brief, we pointed out that if anything this sentence is actually supportive of the notion that Baird is disclosing, not in so many words but disclosing calculation of a tracking error signal and then the question becomes, Your Honor and I think that this is the fulcrum on which the board's decision turns and fails is what is it that we know about what is happening inside block 304 of Baird page 1597 of the appendix based on Baird's express disclosures this court in shearing at page 1379 said an element or even an entire invention is inherent if it is the natural result flowing from the explicit disclosure of the prior art so what does Baird expressly disclose? on appendix P is Baird a closed loop system? yes, Your Honor, Baird is a closed loop system where does it say that? so Baird does not use the word closed it talks about operating four control loops which include focus and tracking and then it explains how it receives digitized photodetector signals and outputs digitized control signals and the only role of the external microcontroller is to provide program inputs so all of that is happening inside the SCP block 304 and Dr. Zek explains that that is necessarily a closed loop system because the only way that servo systems can work in an optical disc drive is by obtaining feedback and calculating an error signal and Your Honor, it's not just Dr. Zek who has confirmed this understanding of the prior art it is also the applicants in the prosecution history of several of these patents who made clear that let me ask you though does a closed loop system assume for the moment that you're correct that Baird is a closed loop system does that get you home so to speak I mean, doesn't it still have to be demonstrated that that closed loop system in Baird inherently or necessarily operates the same way as what's claimed Your Honor, yes we do need to demonstrate that additional piece for inherency and we have demonstrated that in three ways first, through the declaration and deposition testimony of Dr. Zek analyzing Baird in light of his nearly half century experience in the optical disc drive industry second, we know that from the applicants who in several places in the prosecution history and I would like to turn the court's attention to appendix page 1178 where I think the applicants said it most clearly in their pre-appeal brief request for review for the 979 patent what page is that again that is page 1178 of the appendix, Your Honors where the applicants said talking about their invention and trying to distinguish it from the prior heart because the claimed digital signal processor this is the fourth line down on that page because the claimed digital signal processor receives the digitized optical sensor signals necessary to calculate TES and FES it is inherent that it may calculate the error signal of its choice at any given moment either TES or FES so here you have the applicants themselves saying that simply the knowledge that the digital signal processor is receiving digitized photo detector signals which we know from the express disclosure in Baird is going on there in the applicant's words, it is inherent that it may calculate the TES and the FES and throughout their discussion of the prior art contrasted with their alleged invention in the prosecution history they continually emphasize the difference in what is received where was that argued below? Your Honor, I don't believe that this argument was spelled out in those terms below this portion of the prosecution history was in the record and Dr. Zak and the petitioner did point to this portion and quote other statements from the prosecution history to show that the applicants were distinguishing their invention from the prior art solely based on where the calculation of TES and FES occurred and what they repeatedly emphasized is that conventional servo processors receive error signals and what gets sent to the servo processor is something different that another piece of circuitry has already processed the error signals here they're saying that their alleged invention is different because the claimed DSP receives the photo detector signals and it is therefore inherent that it may calculate the TES and FES You haven't gotten to the data sheet is it generally accepted that if that data sheet is deemed prior art that that fills any of the gaps that may have been raised? Your Honor, Toshiba's position is that accepting the ST data sheet as a printed publication would create an obviousness combination if the court were to affirm the PTAB's ruling on inherent anticipation my understanding is that Optical Devices has not agreed to that result therefore if the court were to affirm on inherent anticipation but reverse on the ST data sheet then the matter would need to be remanded to the PTAB to conduct an obviousness analysis Your Honor, if I may I'd like to reserve the balance of my time Thank you, Mr. Panikowsky Mr. Titran Thank you, Your Honor May it please the court Steven Titran Counsel for Appellee and Patent Owner Optical Devices I'd like to talk about three issues today the first of which you talked about inherency Toshiba does ask this court to essentially re-weigh the evidence that the board considered in determining that Baird does not inherently disclose determining a tracking error signal and a focus error signal the board properly determined the standard for inherency which as you pointed out Judge Schall is that the item, missing item must be necessarily present and may not be established by probabilities and possibilities to reach this conclusion the board considered six expert declarations numerous pieces of extrinsic evidence associated with those declarations Mr. Titran, let me ask you what is your client's position on whether or not Baird is an open or a closed loop system It's not clear whether it is an open or a closed loop system as you pointed out in your questioning opposing counsel it simply talks about focus and tracking loops and as optical devices expert pointed out you can have open loop systems as well as closed loop systems so neither of those systems necessarily requires the calculation of a tracking error signal and a focus error signal I was looking at I'm trying to think what appendix 1596 you have this I think I'm talking about figure one that seems to suggest and I emphasize seem because you probably know more about it seems because you probably know more about it than I do but that seems to look like what's going on there is some kind of a what I'll call for one of a better word closed loop operation is that wrong? You have the photo detectors and then going through the servo channel then over to the actuators and I guess 105 is the disk being acted on given the feedback It's still not clear I think opposing counsel said it best when he described the servo processor the servo control processor as a black box It's not clear exactly what is going on It's not clear exactly how the photo detector signals are being utilized in that box as Dr. Calafon explained you can use the photo detector signals for example in an open loop system using the photo detector signals merely as a reference signal or a signal to predict where the optical disk will be going to but not necessarily an error signal which indicates an off track position a position where you currently are versus where you should be and so as you correctly pointed out earlier Dr. Zak did respond in his deposition testimony using language such as it relied on a probability probably was using this not much of a leap because of that the board found that his testimony was not sufficient as compared to Dr. Calafon's testimony the board also found that OD did provide a credible challenge to persuasively rebut the assumption that determinative TES and FES are necessarily present the board relied on substantial evidence to find this that did include the fact that our expert testified that open loop systems can be designed as I just explained that don't require TES and FES also you alluded before that or opposing counsel alluded before that our expert never equated open loop systems such as repetitive systems the robot systems he refers to to optical disk drives that's not true Dr. Calafon did testify that optical disk drives do rotate repeatedly and that you could actually design a system that would open loop track those systems without determining an error signal for opposing counsel to through attorney arguments alone I understood Dr. Calafon to argue among other things and correct me if I'm wrong that you could have assuming there was a closed loop system here you don't necessarily know if the error correction process that's claimed in the patent was taking place is that correct? That's correct Judge Schall, even with a closed loop system you could just use the photo detector inputs as a predictive signal we make an analogy in our briefs to riding a bicycle for example that's a closed loop system you with your eyes you're looking ahead at the road as to where you want to go you're not necessarily looking down to see how far you are off from your path you use that predictive signal to essentially guide where you're driving I take it Mr. is there the state of the record is such you're saying that there's no agreement as to whether there was an open or closed loop system in Baird? not in Baird, no in fact did one of the experts say that Baird was an open or closed loop system? perhaps their expert perhaps said it but our expert said it is not clear and the board actually the board reached the conclusion said that Baird is silent with respect to how focus and tracking error control are accomplished by the SCP in particular whether such control relies on determining any error signals and even if the servo operates in an open or closed loop fashion so there was testimony again on both sides and this is what the board concluded as you pointed out earlier Judge Wallach Toshiba in their reply brief introduced a new argument essentially abandoning their prior inherency argument and introducing a new argument that expressly teaches TES I'd like to touch on that briefly as you pointed out the record below is completely absent not only from the discussion of DPD but is also absent of any assertion and testimony in the declarations as to Baird expressly teaching determining a TES and FES the record focuses completely on inherency so this court should just disregard that well they were responding those are difficult aspects but when there's an argument by the respondent then in the reply brief that's the purpose of the reply brief to respond to those arguments that's absolutely correct Judge Newman and even though they did that it is as Judge Wallach pointed out completely unsubstantiated by the record DPD was never briefed below it was never discussed below by the experts and therefore could not have been considered by the board and let me ask you this on the ST data sheet and press release which you essentially won on the last part of the red brief argues that the board erred because it was hearsay in denying your motion to exclude it but you're not appealing that why is the argument even there? the argument is there and it was there put alternatively are you going to tell me it's gravy? I'm not going to use the word gravy in this court it is there because it is a secondary argument we ask for it alternatively if the board does decide to admit based on the other arguments they put forward however the more important thing with the ST data sheet is the fact that the controlling law requires a document like that a non-self-authenticating non-patent literature document to be properly corroborated but where is that? it's got a date on it and it was referred to or the availability with the press release that's a very difficult question to show that there was no prior knowledge publication of itself the problem is that the America Invents Act says publications but there is nonetheless a serious question of prior knowledge involved in that data sheet that's right Judge Newman and even prior to the America Invents Act the concept of a printed publication non-patent literature if you will did exist and if you look at the case law well it was certainly published so the only it was certainly printed so the only question is when could it have been made available beyond the source the third party source with no relation to this litigation I gather the only competent source that could opine and provide evidence on that would be either the publisher themselves of the document stating what the date means or someone familiar with the routine business practices well it has a date there is something there is nothing to suggest that that date was placed on it for purposes of this current litigation the document itself Judge Newman does refer to itself as a preliminary spec and if you look at that as compared to the ST data sheet the ST data sheet but the document has a date on it that's what concerns me it has a date on it Your Honor and it's certainly in print it's right Your Honor but what are the elements of publication counsel the elements of of publication is that it needs to either be available to the public before the critical critical date evidence of availability or evidence of dissemination and Toshiba has provided evidence of neither of that they show a date on the document but they provide no testimony showing that it was accessible they show no testimony showing that it was disseminated even the ST data sheet refers to a version of the chip if you look at the press release it says a version of the chip will be released but are you telling us that any printed document with a date on it you have to go back to the to the source to the printer to authenticate it isn't it self-proving the court the court in Lister makes clear that there are a plethora of circumstantial evidence that may be used to prove that a a printed publication is available before the critical date but the important thing is that the three pieces of evidence that Toshiba provided an internal data sheet that just has a date on it a press release we don't know if it's internal or not isn't that an issue it's when you get to that point plus the press release announcing the product and contrary to that argument on the other side Judge Newman we don't know that it was released either and so the fear here is that it isn't whether it was released it was whether it was available it's whether it was available or disseminated to the public and so if we ask ourselves we don't know whether or not the document wasn't released then we have to also accept the fact that the document perhaps was not released and it would have been a simple task for Toshiba we served our injections timely as the IPR rules require it would have been a simple task for Toshiba to go to ST Microelectronics and get a person familiar with whoever prints these data sheets because they obviously print these data sheets all the time to explain the process to you and they did not do that they instead chose to rely on testimony not competent testimony of their own expert who again used terms such as it stands to reason that a data sheet will be released with a product when he bases that on no internal knowledge of what ST Microelectronics processes are and the fact that the data sheet itself does not necessarily refer on its face to the chip that's described in the... But now we're talking about the content which we haven't really gotten to of whether it would be at least relevant in terms of obviousness the question is whether it's available to be considered at all That's correct Toshi, what you're saying is you're agreeing with Judge Newman that there are a number of ways that this can be established that it was publicly available but that Toshiba did not come forward and present evidence with respect to any of those ways Because it's got a date on it Those are difficult fine lines to draw that a date on a data sheet doesn't mean anything you have to go back to the source Courts struggle with the same issues in constant versus advanced microdiases as well as enhanced security where both in those cases and Toshiba improperly relies on them they did provide corroborating evidence from the creator of the document to explain what that information means That's the content as I say that's a different question If it's not admissible it doesn't matter what its content is Isn't that right? That's correct and we believe the board properly ruled it is not admissible Can you draw at least analogies from other laws relating to publication like defamation in which there has to be actual positive proof as opposed to negative inferences that there's been publication of someone other than the person who's been defamed actual someone saying yes I saw it I'm running out of time I won't get to my last section Please respond if there's a response to Yes In this situation the possibility that evidence could be tampered with is too great You've got patents patent publications that are available You've also got companies that go to great lengths to establish that their printed publications are not are published in a certain fashion This particular document does not fall in that category It is not self-authenticating as to its date What I'm saying is there's positive proof and negative proof Positive proof is yes I published this or yes I received it and therefore it was published to me Negative proof is the absence of anyone saying that and you're presenting negative proof That's directly analogous to the way any kind of newspaper defamation action would occur With all due respect this is not a defamation action Of course it's not But publication is an element It is And this court has made clear that Toshiba knew this law before they filed their RPRs and chose to use MPL in their petition that to be able to get this evidence admitted they needed to corroborate what the information on the data sheet meant It's expressly the date judgment That's essentially We're still worried about the date It certainly shows prior knowledge which according to the American Vence Act is not included so you have to squeeze it into the narrow aspect of the American Vence Act which says publication So that's our dilemma Okay Thank you Thank you Mr. Pankowski let's enlarge his time as well Let's make it four minutes Thank you Your Honor This court's precedent requires reversal of the board's conclusion that the ST data sheet was not a printed publication and there are three cases that are especially informative here First in Lister at page 1317 this court said that if the challenger of the patent makes the prima facie case of dissemination and public accessibility What was your evidence of publication? Publication Yes Your Honor our evidence of publication is circumstantial evidence as is often the case and it's not necessarily inferior to direct evidence and it comes from the totality of three pieces of evidence First the ST data sheet itself which bore a May 1998 date and had all of the That's evidence that somebody sat down typed something and put a date on it Yes Your Honor How is that evidence of publication? Your Honor it is not by itself sufficient for publication but it is one of the three building blocks we have here that we have the ST data sheet with the date and with all of these other indicia that it was not a draft that it was intended for public dissemination then we have on May 18th 1998 the press release announcing the release of the specific product referenced in the ST data sheet and then we have Dr. Zack's testimony based on his nearly half century of optical disc industry experience saying that he didn't just say it stands to reason that the ST data sheet was also available in May 1998 the reason that he gave for that is that chip companies typically disseminate a data sheet when they release a declaration from the publisher but contrary to counsel's statement this court has never held that a declaration from the publisher is required so given all that I don't infer it from a declaration from the publisher that's direct evidence your honor the type of declaration that would give rise to an inference would be a declaration where the publisher says it was our general practice to release this type of information and that is what you often have in these cases that's a business practice exception exactly so Dr. Zack's declaration is an industry practice declaration and when you take those three pieces of evidence together and here is the key point in the legal framework under Lister what you have is a prima facie case of publication it was unreasonable for the board to conclude that that was not a prima facie case so what happened? Under Lister what happened is that the burden shifted to OD and what did OD do? All they did was include a statement at page 3338 of the appendix in Dr. DeCalifan's declaration where he said I personally did not see the ST data sheet in 1998 there was not a case like Hall at pages 899-900 where the court said look the prima facie burden has been satisfied and that prima facie case was unrebutted that is what we have here and therefore no substantial evidence supports the board's conclusion and as stated by Dr. DeCalifan did your expert with nearly 50 years of experience conduct a search to determine if there had been publication? Your honor I'm not aware if the expert did that or not there is no evidence in the record that the expert did that. Your honor there is no evidence that the expert did that. Your honor there's no evidence that the expert did it this court's precedent does not require such a search and whether the burden is met is not measured by what type of evidence conceivably may have been adduced and looking at whether that type of evidence was measured by what evidence must be adduced. Yes your honor and for a printed publication this court has never set forth the type of requirement that the board has effectively set forth and that counsel for OD has expressly set forth. The board and OD are advocating a standard under which you cannot accept that something is a printed publication unless you have a declaration from the publisher and that is not the law. This court has never set it and to affirm would be to essentially endorse that view of the law that the board and OD have adopted and therefore your honor this court should rule. You rely on the Dr. Zeck testimony but the board specifically found that we do not afford persuasive weight to Dr. Zeck's statement regarding the assertive availability of the ST data sheet and it reached that conclusion according to the board because he didn't provide any supporting evidence kind of along the lines of what maybe Judge Wallach was asking about. So the board discounted the Zeck testimony so what are you left with then? Your honor what we're left with is the fact that the board improperly and unreasonably discounted Dr. Zeck's testimony. Their conclusory finding on that is not entitled to deference because the board misread Dr. Zeck's declaration. At page 1730 of the appendix paragraph 90 Dr. Zeck said because the chip was available in May 1998 it stands to reason that the ST data sheet also was available in May 1998. The board treated that sentence as if there were a period at that point and not a comma. It ignored the reason that Dr. Zeck gave which is as chip companies typically disseminate a data sheet when they introduce a new chip. He gave that testimony in light of his nearly half a century of industry experience which is outlined at pages 1684 to 1686 of the appendix. That was enough to establish a prima facie case. It was unreasonable to conclude otherwise. The burden shifted to O.D. and as O.D. effectively admits at page 36 of their red brief this is a case that rises or falls on whether or not Toshiba established a prima facie case. They don't even contend that they supplied any type of rebuttal evidence and that is the reason why no substantial evidence supports the board's ruling on printed publication and therefore that ruling should be reversed. Okay. Thank you. Thank you, counsel. Thank you both. The case is taken